UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>      Petitioner,<br><br>      -v.-<br><br>THOMAS DECKER, *in his official capacity as Director of the New York Field Office of U.S. Immigration & Customs Enforcement*, CHAD WOLF, *in his official capacity as Acting Secretary, U.S. Department of Homeland Security*, and WILLIAM BARR, *in his official capacity as Attorney General of the United States*,<br><br>      Respondents. | 20 Civ. 4232 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

   Petitioner John Doe brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; and Article I, Section 9, of the United States Constitution, challenging his prolonged detention without a bond hearing by federal immigration authorities. Doe's Petition seeks a writ ordering Respondents: (i) to release Petitioner immediately under parole, bond, or reasonable conditions of supervised release, or (ii) to provide Petitioner with a constitutionally adequate, individualized bond hearing before an impartial adjudicator, after permitting him sufficient means and time to communicate privately with his attorney. Respondents Thomas Decker, Chad Wolf, and William Barr oppose Doe's requested relief. For the reasons explained below, Doe's Petition is granted in part.

## BACKGROUND[1]

### A.    Factual Background

Petitioner Doe is a 30-year-old citizen of ███████████████████

██████ who has been detained by the federal government without a bond

hearing for over a year.  (Am. Pet. ¶ 1).  Doe entered the United States through

the Visa Waiver Program ("VWP") in 2012.  (*Id.* at ¶ 2).  He remained in the

United States past his authorized stay and has lived in New York since that

time.  (*Id.* at ¶ 20).  Once in New York, Doe began living with his cousin and

found work as a construction worker.  (*Id.* at ¶ 21).  He eventually became the

superintendent of an apartment building.  (*Id.*).

In or about 2017, Doe ██████████████████████████

████████████████████████████████████████████████

███.  (Am. Pet. ¶ 22).  On ███████████████, Doe was arrested and charged

with drug offenses by the Office of the Special Narcotics Prosecutor of the City

of New York.  (*Id.* at ¶ 23).  Thereafter, Doe began to cooperate with law

enforcement, ultimately leading to the convictions of several of his co-

conspirators.  (*Id.* at ¶¶ 23-25).  In ███████████, Doe pleaded guilty to one

count of conspiracy to distribute and to possess with intent to distribute

---

[1]     This opinion draws on facts alleged in the Amended Verified Petition for Writ of Habeas
Corpus Pursuant to 28 U.S.C. § 2241 ("Am. Pet." (Dkt. #10)); Respondents' Return to
the Amended Habeas Petition ("Return" (Dkt. #13)); the Declaration of Deportation
Officer Jason Mascia ("Mascia Decl." (Dkt. #14)); and the Declaration of ██████
██████████████ (Dkt. #15)).

For ease of reference, the Court refers to the parties' briefing as follows: Respondents'
Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus as
"Resp. Opp." (Dkt. #17); and Petitioner's Reply in Support of the Petition for Habeas
Corpus as "Pet. Reply" (Dkt. #18).

heroin, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846; and one count of possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (*Id.* at ¶ 25; Mascia Decl. ¶ 9; Return, Ex. 1 (Doe's "rap sheet")).  On ███████████, Doe was sentenced principally to time served and five years' supervised release.  (Am. Pet. ¶ 25).

On ███████████ Doe was released from federal criminal custody and placed in civil immigration detention by Immigration and Customs Enforcement ("ICE") at ████████████████████████████████.  (Am. Pet. ¶ 26).  He has been detained by ICE since that date.  (*Id.*).  After being detained by ICE, Doe filed an application for deferral of removal under the Convention Against Torture ("CAT"), seeking relief from deportation before the immigration court based on his fear of deportation to ████████████ ████████████.  (*Id.* at ¶ 27).[2]  Doe fears returning to ████████████ ███████ because the individuals against whom he cooperated in the United States have threatened him and have significant ties to ████████████ ███████.  (*Id.*).  Doe also fears returning to ██████ because he cooperated with the ██████ ████████████ investigation against gang members who later threatened him because of this cooperation.  (*Id.*).

Doe remained in ICE custody for five months after he filed his immigration petition, before Respondents scheduled even his initial hearing in

---

[2]  As a VWP entrant, Doe is entitled to apply for relief from removal, but only through limited "fear-based" applications for relief — namely, asylum, withholding of removal, and deferral of removal under CAT.  *See* 8 U.S.C. § 1187(b)(2).  The proceedings in which VWP entrants are entitled to make these applications are commonly referred to as "asylum-only" proceedings.

immigration court.  (Am. Pet. ¶ 30; *see* Mascia Decl. ¶ 11).  Doe and his family inquired several times about the delays in his case, but nobody was able to assist them.  (Am. Pet. ¶ 31).  In mid-November 2019, New York Immigrant Family Unity Project ("NYIFUP") attorney Natali Soto of Brooklyn Defender Services learned about Doe's prolonged detention.  (*Id.* at ¶ 32).  On December 3, 2019, Ms. Soto entered a notice of appearance on behalf of Doe and filed a motion for a hearing before the immigration court.  (*Id.*).

The immigration court scheduled Doe's first master calendar hearing for December 9, 2019.  (Am. Pet. ¶ 33).  On that date, Ms. Soto appeared in person and ICE made Doe available via Video Teleconferencing Communication ("VTC") from the ███.  (*Id.*).  The immigration court adjourned the case to January 6, 2020, for the filing of Doe's applications for relief from removal.  (*Id.*).

On January 6, 2020, Ms. Soto appeared in court and filed Doe's application for CAT protection.  (Am. Pet. ¶ 34).  ICE, however, did not produce Doe in person and he was not able to appear via VTC because the courtroom equipment was not functioning properly.  (*Id.*).  Consequently, the immigration court adjourned the case to January 13, 2020.  (*Id.*).

On January 13, 2020, the immigration court scheduled Doe's individual hearing (or "IH") on his applications for relief, the immigration equivalent of a trial, for March 24, 2020.  (Am. Pet. ¶ 35).  However, the immigration court subsequently cancelled the IH and administratively rescheduled the case for a master calendar hearing on February 24, 2020.  (*Id.*).  Ms. Soto received the hearing notice for the new master calendar hearing in the mail.  (*Id.*).  Neither

party had requested an adjournment and the immigration court did not provide Ms. Soto or Doe with an explanation. (*Id.*). During the newly-scheduled master calendar hearing on February 24, 2020, the immigration judge confirmed that Doe was in asylum-only proceedings and that an asylum application had been properly filed, but did not provide any explanation for the delay in Doe's removal proceedings. (*Id.* at ¶ 36). The immigration court again scheduled Doe for an IH on his applications for relief, this time to take place on April 6, 2020. (*Id.*).

In the subsequent weeks, the spread of the COVID-19 virus led to an unprecedented public health emergency in New York and around the world. (*See* Am. Pet. ¶ 37). On March 30, 2020, despite the rapidly developing COVID-19 pandemic, Ms. Soto complied with the IH callup date set by the court. (*Id.* at ¶ 38). To that end, Ms. Soto filed over 700 pages of evidence in support of Doe's removal defense, including two expert reports and evidence of Doe's fear of return to ███████████████████████. (*Id.*).

However, also around this time, Ms. Soto began having difficulty obtaining confidential calls with her client, due to the fact that ███ had suspended all visitation at the jail, including attorney visitation, in light of the COVID-19 pandemic. (Am. Pet. ¶ 41). As a result of these limitations, Ms. Soto and Doe have only been able to communicate via brief phone and video teleconference conversations. (*Id.*). The communications are not confidential, are often interrupted by equipment failures, and occur in a room that is visible to other detainees and is not sound-proof. (*Id.*). Due to these issues, on

April 2, 2020, Ms. Soto filed a motion to adjourn Doe's April 6, 2020 hearing on the grounds that she had not been afforded sufficient opportunities for confidential communications with Doe to prepare for the extensive testimony he would be expected to present at the IH to meet his burden of proof for asylum eligibility.  (*Id.* at ¶ 39).  Further, shortly before the scheduled IH, counsel for ICE served evidence in Doe's removal case, which evidence Doe was unable to review privately with his counsel.  (*Id.* at ¶ 40).

On April 6, 2020, the immigration court re-scheduled Doe's IH for May 6, 2020.  (Am. Pet. ¶ 42).  Ms. Soto was informed by an immigration court clerk that the hearing had been administratively rescheduled because the court was unable to reach ███ for Doe's VTC appearance.  (*Id.*).  The immigration court did not rule on Doe's motion to continue, nor did it address the ongoing access issues regarding confidential communications with his immigration counsel. (*Id.*).  On April 30, Ms. Soto filed a motion to continue the May 6, 2020 IH because, although she had continued to make diligent efforts to prepare for the hearing, she still could not communicate privately with Doe.  (*Id.* at ¶ 43).  On May 6, 2020, during a brief pre-hearing telephonic conference, the immigration court granted Doe's motion to continue and scheduled Doe for a master calendar hearing on May 18, 2020.  (*Id.* at ¶ 44).

On May 18, 2020, during Doe's telephonic master calendar hearing, ICE failed to make Doe available in person or via VTC from ███.  (Am. Pet. ¶ 45).  Consequently, the immigration court adjourned the case to June 1, 2020.  (*Id.*).  On June 1, 2020, Ms. Soto explained to the immigration court

that ICE still had not provided her with a confidential means of communicating with her client. (*Id.* at ¶ 46). Counsel for ICE suggested that she coordinate this with Doe's deportation officer. (*Id.*). The deportation officer told Ms. Soto that she should come in person to ███, seemingly unaware that no in-person visitation was then permitted at ███. (*Id.*). The case was adjourned to June 8, 2020, for an update on the communication issues. (*Id.*).

On June 8, 2020, Doe appeared via VTC with counsel before the immigration judge. (*See* Mascia Decl. ¶ 23). At the hearing, Ms. Soto explained that she had been trying to set up confidential communications with Doe. (*See id.*). Ms. Soto requested additional preparation time. (*See id.*). The immigration judge adjourned Doe's case to a master calendar hearing on June 22, 2020. (*See id.*).

## B.   Procedural Background

On June 3, 2020, Doe filed a habeas petition under 28 U.S.C. § 2241 in this Court, challenging his current immigration detention as unlawful and seeking an order requiring ICE to release him immediately or provide him with a bond hearing. (*See* Dkt. #1). On June 8, 2020, the Court granted Doe's motion to proceed under a pseudonym. (Dkt. #8). On June 11, 2020, Doe filed an amended petition (the "Amended Petition"). (*See generally* Am. Pet.). The Amended Petition asserts a single cause of action: that Respondents' refusal to provide Doe with a bond hearing violates the Due Process Clause of the Fifth Amendment. (*Id.* at ¶¶ 89-92). On June 19, 2020, Respondents filed an opposition to the Amended Petition. (Dkt. #13-15, 17). Doe filed a reply brief

on June 24, 2020.  (Dkt. #18).  Accordingly, Doe's motion is fully briefed and
ripe for review.

## DISCUSSION

### A.    Jurisdiction over Habeas Petitions

The general habeas corpus statute, set forth at 28 U.S.C. § 2241,
"authorizes a district court to grant a writ of habeas corpus whenever a
petitioner is 'in custody in violation of the Constitution or laws or treaties of the
United States.'"  *Wang* v. *Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting
28 U.S.C. § 2241(c)(3)).  Under this provision, federal courts are empowered to
hear claims by non-citizens challenging the constitutionality of their detention.
*See Demore* v. *Kim*, 538 U.S. 510, 516-17 (2003).  The Government does not
dispute that federal question jurisdiction exists in this case.

### B.    Detention Pursuant to 8 U.S.C. § 1226(c)

The Court has already explicated its views on the constitutionality of
indefinite detention pursuant to 8 U.S.C. § 1226(c) in *Reid* v. *Decker*, No. 19
Civ. 8393 (KPF), 2020 WL 996604 (S.D.N.Y. Mar. 2, 2020).[3]  The Court repeats
such views, as relevant, here.

---

[3]    Doe's Amended Petition preempts an argument he anticipated Respondents would
make: that Doe is detained pursuant to 8 U.S.C. § 1187, the statute governing VWP
proceedings, rather than 8 U.S.C. § 1226(c).  (*See* Am. Pet. ¶ 64).  However,
Respondents assert that Doe is subject to detention pursuant to 8 U.S.C. § 1226(c).
(*See* Resp. Opp. 1, 7-10).  Accordingly, the basis for analyzing Doe's detention is the
same as for other § 1226(c) detainees.  *See Dukuray* v. *Decker*, No. 18 Civ. 2898 (VB),
2018 WL 5292130 (S.D.N.Y. Oct. 25, 2018) (holding that prolonged detention claim
brought by VWP entrant should be evaluated under same factor-based test enunciated
in *Sajous* v. *Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23,
2018)).

There is no dispute "that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523; *see Reno* v. *Flores*, 507 U.S. 292, 306 (1993).  It is equally undisputed that "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas* v. *Davis*, 533 U.S. 678, 690 (2001). As such, "[i]ndefinite detention in connection with removal proceedings without an opportunity for a bail hearing, where there is no possibility of actual removal, violates the due process rights of the detained alien." *Debel* v. *DuBois*, No. 13 Civ. 6028 (LTS) (JLC), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014) (collecting cases).  Nonetheless, under certain circumstances, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

Under federal immigration law, the Department of Homeland Security is authorized to arrest and detain an alien who has entered the United States but is believed to be removable.  8 U.S.C. § 1226(a); *Lora* v. *Shanahan*, 804 F.3d 601, 608-09 (2d Cir. 2015), *vacated on other grounds sub nom. Shanahan* v. *Lora*, 138 S. Ct. 1260 (2018).  The alien may be detained "pending a decision on whether the alien is to be removed," or federal officials may choose to release the alien on bond or conditional parole.  8 U.S.C. § 1226(a)(1)-(2).  Even if officials decide to detain the alien, "an IJ can ordinarily conduct a bail hearing to decide whether the alien should be released or imprisoned while

proceedings are pending." *Lora*, 804 F.3d at 608.  Under § 1226(c), however, certain classes of aliens are subject to mandatory detention and may not, under the statute, be released on bond.  *See Jennings* v. *Rodriguez*, 138 S. Ct. 830, 837-38 (2018) (citing 8 U.S.C. § 1226(c)).  Broadly speaking, aliens subject to mandatory detention include those who have committed certain "crimes involving moral turpitude" as defined by statute, controlled substance offenses, aggravated felonies, firearms offenses, or terrorist activities.  *See* 8 U.S.C. § 1226(c)(1)(A)-(D).

In *Demore*, a legal permanent resident ("LPR") who had been convicted of two crimes involving moral turpitude and conceded his removability brought a facial constitutional challenge to § 1226(c).  538 U.S. at 513-14.  The district court found the statute facially unconstitutional and the Ninth Circuit narrowed that holding as applicable only to LPRs.  *See Kim* v. *Ziglar*, 276 F.3d 523, 527-28 (9th Cir. 2002).  On appeal, the Supreme Court reversed, holding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings."  *Demore*, 538 U.S. at 513.  By "persons such as respondent," the Court specified that it referred to "a criminal alien who has conceded that he is deportable."  *Id.* at 531.  The "brief period" envisioned by the Court "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  *Id.* at 530.

*Demore* discussed and distinguished *Zadvydas*, a prior Supreme Court decision on the constitutionality of immigration detention.  *Zadvydas* had dealt not with § 1226(c) detention during removal proceedings, but with 8 U.S.C. § 1231, which allows the Government to detain a noncitizen without bond beyond the 90 days following a final order of removal if done for the purpose of facilitating removal from the United States.  533 U.S. 682.  The *Zadvydas* petitioners had been ordered removed, but when no other country would accept them, the Government interpreted § 1231 to authorize their indefinite detention.  *Id.* at 684-87.  To avoid the serious Due Process Clause concerns raised by that interpretation, the *Zadvydas* Court construed the statute to contain an implicit six-month limit to detention without bond for a noncitizen under a final order of removal whose actual removal is not reasonably foreseeable.  *Id.* at 690, 701.

The *Zadvydas* holding rested on the premise that when "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed."  *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690).  Unlike the indefinite § 1231 detention in *Zadvydas* — which could no longer facilitate the petitioners' actual removal — the limited § 1226(c) detention pending removal proceedings in *Demore* was found to be facially constitutional because it was reasonably related to its purpose, *viz.*, "preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if

ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528.

While the *Demore* majority opinion upheld the constitutionality of § 1226(c) both facially and as applied to the respondent, Justice Kennedy's concurrence briefly addressed the circumstances under which that conclusion could change:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified .... Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).  Thus, under Justice Kennedy's analysis, when detention under § 1226(c) is unreasonable or unjustified, a bond hearing is required.  One indicator of unreasonable detention is unreasonable delay by the Government in pursuing and completing removal proceedings.

Building on these two decisions, the Second Circuit in 2015 decided *Lora* v. *Shanahan*, 804 F.3d 601 (2d Cir. 2015), in which it held that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."  *Id.* at 616.  The

Second Circuit interpreted *Zadvydas* as "the Supreme Court signal[ing] its concerns about the constitutionality of a statutory scheme that ostensibly authorized indefinite detention of non-citizens." *Id.* at 613. And it described the Supreme Court's decision in *Demore* as "emphasiz[ing] that, for detention under the statute to be reasonable, it must be for a brief period of time." *Id.* at 614.

The Second Circuit found further support for its conclusion in Justice Kennedy's concurrence in *Demore*, in which he reasoned that, "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Lora*, 804 F.3d at 614 (alteration in original) (quoting *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring)). The Second Circuit concluded that *Zadvydas* and *Demore*, taken together, "clearly establish that mandatory detention under section 1226(c) is permissible, but that there must be some procedural safeguard in place for immigrants detained for months without a hearing." *Id.* As a result, the Second Circuit employed the canon of constitutional avoidance to read "an implicit temporal limitation" in the statute. *Id.* The Ninth Circuit similarly adopted a six-month bright line rule for detention pursuant to § 1226(c). *See Rodriguez* v. *Robbins*, 715 F.3d 1127, 1132-33 (9th Cir. 2013).

*Lora*'s resolution was short-lived. In *Jennings* v. *Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court concluded that the Ninth Circuit had erred in

13

applying the canon of constitutional avoidance to § 1226(c), and it reversed the Ninth Circuit's bright-line rule.  Holding that § 1226(c) unambiguously mandated detention for certain classes of individuals, the Court distinguished *Zadvydas* as having concerned a statute that was ambiguous, thus triggering the application of the constitutional-avoidance canon.  *Jennings*, 138 S. Ct. at 843-46.  The Court vacated the Ninth Circuit's decision and remanded the case "to consider respondents' constitutional arguments on their merits."  *Id.* at 851.  Because the *Lora* decision had also relied upon the *Zadvydas* constitutional avoidance analysis, the Supreme Court vacated *Lora* after *Jennings* was issued.  *Shanahan* v. *Lora*, 138 S. Ct. 1260 (2018).  On remand, the Second Circuit dismissed the case as moot because Lora had been granted cancellation of removal.  *Lora* v. *Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018) (summary order).

Since then, courts within this Circuit have examined the extent to which other aspects of *Lora* — in particular, its due process analysis — remain good law.  In the first of these opinions, *Sajous* v. *Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018), a sister court in this District concluded that "the reasoning of *Lora* remains strong persuasive authority," though not binding.  *Id.* at *7.  Judge Nathan reasoned that, irrespective of *Lora,* it remains clear under Justice Kennedy's concurrence in *Demore*, as well as a wealth of other precedent, that "prolonged mandatory detention under § 1226(c), under certain circumstances …, can become unreasonable such that an alien is entitled to an individualized determination as to his risk of flight

and dangerousness." *Id.* at *9 (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)).  After concluding that a bright-line six-month rule was not constitutionally mandated, Judge Nathan applied a circumstance-specific approach to conclude that Sajous had been deprived of procedural due process after having been detained for nine months in a New Jersey prison facility without an individualized bond hearing.  *See id.* at *9-12.  Of note, Judge Nathan identified five factors to consider in determining whether immigration detention without a bond hearing violates due process: (i) the length of time the alien has been detained; (ii) whether the alien is responsible for the delay; (iii) whether the alien has asserted defenses to removal; (iv) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (v) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.  *Id.* at *10-11.

In *Hernandez* v. *Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *8-10 (S.D.N.Y. July 25, 2018), Judge Carter applied the factors Judge Nathan recited in *Sajous*.  Judge Carter noted that, as the detainee's immigration case was not even yet in appeals, "[h]is case — and detention — could continue for a significant additional period of time," due not only to "backlogs and the new videoconferencing procedures at the Varick Street court," but also "in light of the extensive evidence and argument that [the detainee] has every right to present."  *Id.* at *8.  He further considered "some evidence of government delay," citing the fact that it had taken over a month for the detainee's initial

immigration appearance to occur, and when the detainee appeared for his merits hearing before the IJ, the IJ was not ready and adjourned the matter for nearly two months.  *Id.* at *10.  Ultimately, Judge Carter held that prolonged mandatory detention without a bond hearing under § 1226(c) violated the Due Process Clause under either an individual-factor test or a bright-line rule, explaining that the petitioner's nine-month "detention without a bond hearing has become unreasonably prolonged, whether the Court applies a bright-line rule or conducts an as-applied reasonableness analysis."  *Id.* at *6.

Courts in this District — including this Court in *Reid* — have now "overwhelmingly adopted" the *Sajous* five-factor approach.  *See, e.g.*, *Dukuray* v. *Decker*, No. 18 Civ. 2898 (VB), 2018 WL 5292130, at *3-4 (S.D.N.Y. Oct. 25, 2018) (applying this approach to VWP entrant like Doe); *Cabral* v. *Decker*, 331 F. Supp. 3d 255, 260-63 (S.D.N.Y. 2018); *Brissett* v. *Decker*, 324 F. Supp. 3d 444, 451-53 (S.D.N.Y. 2018); *Darko* v. *Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018); *Lett* v. *Decker*, 346 F. Supp. 3d 379, 387-88 (S.D.N.Y. 2018); *see also Black* v. *Decker*, No. 20 Civ. 3055 (LGS), 2020 WL 4260994, at *1 (S.D.N.Y. July 23, 2020); *Graham* v. *Decker*, No. 20 Civ. 3168 (PAE), 2020 WL 3317728, at *1 (S.D.N.Y. June 18, 2020).  This Court continues to align itself with *Sajous* and its adherents, holding that whether mandatory detention under § 1226(c) has become "unreasonable," *Demore*, 538 U.S. at 532 (Kennedy, J., concurring), and thus a due process violation, must be decided using an as-applied, fact-based analysis.

## C.   Doe's Detention for More Than One Year Without a Bond Hearing Is Unconstitutional

Applying such an individualized, fact-based approach, the Court concludes that Doe's detention here without an individualized bond hearing violates due process.

### 1.   The Length of Doe's Detention

When determining the reasonableness of a noncitizen's continued detention under § 1226(c), "[t]he first, and most important, factor … is the length of time the alien has already been detained." *Sajous*, 2018 WL 2357266, at *10. Courts in this District have largely agreed that detention without an individualized bond hearing for "longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Sajous*, 2018 WL 2357266, at *10 (granting petition after eight months' detention); *see also, e.g., Araujo-Cortes* v. *Shanahan*, 35 F. Supp. 3d 533, 548-49 (S.D.N.Y. 2014) (granting petition after six months' detention); *Cabral*, 331 F. Supp. 3d at 261 (seven months); *Gomes Herbert* v. *Decker*, No. 19 Civ. 760 (JPO), 2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019) (eight months); *Hernandez*, 2018 WL 3579108, at *8 (nine months); *Perez*, 2018 WL 3991497, at *5 (nine months); *Dukuray*, 2018 WL 5292130, at *4 (ten months).

Doe's detention exceeds the detentions in those cases. Indeed, Doe has spent over a year in immigration detention. He was arrested by ICE on July 12, 2019, and placed in civil immigration detention at ██, where he has remained ever since. Furthermore, it is likely that Doe's detention is likely to continue for a significant amount of time, as access to prisons and courthouses

remains limited as the COVID-19 pandemic continues.  As of the date of his
Amended Petition, Doe was not scheduled for an IH and several IH proceedings
had already been adjourned.  Thus, it could be several months before Doe is
able to present his asylum claim before the immigration court.  At that point,
the immigration judge may take several additional weeks or months to issue a
decision, and after any decision both Doe and ICE may appeal as of right.  Doe
would remain detained without a bond hearing during any appeal.  Thus, this
"most important" factor weighs heavily in favor of granting Doe a bond hearing.
*See Sajous*, 2018 WL 2357266, at *9.

### 2.    Whether Doe Is Responsible for the Delay

Under *Sajous*, the second factor courts consider is whether the alien is
responsible for the delay.  *See* 2018 WL 2357266, at *10.  If the alien has
requested several continuances or otherwise delayed immigration proceedings,
it is less likely that the length of his detention could be deemed unreasonable.
*Id.* Aliens who are merely gaming the system to delay their removal should not
be rewarded with a bond hearing that they would not otherwise get under the
statute.  *Id.* On the other hand, if immigration officials have caused delay, that
fact weighs in favor of finding continued detention to be unreasonable.  *Id.*

At the outset, it is notable that Doe's master calendar hearing was
delayed by five months due to an administrative error.  (*See* Mascia Decl. ¶ 11;
Resp. Opp. 15 ("The government acknowledges that there was a nearly five-
month delay in setting Doe's initial hearing …[.]")).  Respondents' argument
that the slow pace of Doe's removal proceedings has been "a function of the

due process afforded to him" (*id.* at 15), and their attempt to attribute such delays to Doe's right to "pursue any avenue of relief from removal available to him" (*id.* at 16), are difficult to accept in this case, where their own administrative error caused Doe's master calendar hearing to be delayed by five months.

Respondents also point out that Doe has requested at least six continuances since his initial master calendar hearing, including for "attorney preparation time." (Resp. Opp. 15). However, "attorney preparation time" is not a fair characterization of what has transpired. The subsequent delays in Doe's case have largely been attributable to restrictions on access, at ███ and the courts, occasioned by the COVID-19 pandemic. Ms. Soto's inability to engage in confidential communications with her client is one of the unfortunate consequences of the pandemic, and such issues certainly cannot be attributed to Doe. It is clear that Doe's request for continuances have not been an attempt to "gam[e] the system to delay [his] removal." *Sajous*, 2018 WL 2357266, at *10.

### 3.   Doe's Defenses to Removal

In *Sajous*, the court held that whether the detained alien has asserted defenses to removal would be pertinent to the due process analysis. *See Sajous*, 2018 WL 2357266, at *11. The court explained that if an alien has not asserted any grounds on which his removal may be cancelled, he will presumably be removed from the United States eventually and detaining him

19

will always, at least marginally, serve the ultimate purpose behind the detention.  *See id.*

Doe has filed an application for protection under the Convention Against Torture, supported by voluminous documentary evidence, which Respondents do not dispute is properly before the immigration court pursuant to 8 U.S.C. § 1187.  (*See* Am. Pet. ¶¶ 34-36, 38).  This factor therefore also weighs in favor of finding that Doe's detention has become unreasonable.  *See Reid*, 2020 WL 996604, at *10; *Sajous*, 2018 WL 2357266, at *11.

### 4. Doe's Criminal Sentence

The next factor courts in this District typically consider is whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable.  *See Sajous*, 2018 WL 2357266, at *11. This factor is not directly applicable here, since Doe is rendered removable due to overstaying his visit under VWP, rather than his criminal conviction. Nevertheless, Doe's stint in immigration detention is quickly approaching the length of his eighteen-month criminal sentence, which counsels in favor of finding a due process violation.

### 5. The Difference Between Doe's Current Facility and a Penal Institution for Criminal Detention

The final factor courts consider is whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.  *See Sajous*, 2018 WL 2357266, at *11.  This factor weighs in favor of granting Doe the bail hearing he seeks.

20

Doe is confined at ███, a county jail where he is held in punitive conditions similar to those of inmates serving criminal sentences.  *See Sajous*, 2018 WL 2357266, at *11; *see also Hernandez*, 2018 WL 3579108, at *10 (granting bond hearing where petitioner was detained in a "penal institution" where he was "subject to 'identical' conditions as individuals held in criminal custody"); *Lett*, 346 F. Supp. 3d at 388 (granting hearing where asylum seeker was "detained in a county jail that is used for criminal detention").  ███ is not meaningfully different from a penal institution, as it is in fact a penal institution.  And, of course, detention at ███ is particularly worrisome in light of the ongoing COVID-19 pandemic and the increased risk of infection faced by individuals in carceral settings.  (*See* Am. Pet. ¶¶ 52-55).

All of these factors, taken together, demonstrate that Doe's continued detention without a bond hearing has become unreasonable and unconstitutional.  *See Sajous*, 2018 WL 2357266, at *12.  A bond hearing is therefore warranted.  The Court considers in the next section the procedural protections Doe seeks at such a hearing.

## D.     The Court Orders Certain Procedural Requirements for Doe's Bond Hearing

The Amended Petition asks the Court to require that Doe be afforded certain procedural protections at any bond hearing that the Court orders.  Specifically, Doe asks that: (i) he be produced via VTC and that his counsel be able to appear via VTC; (ii) ICE bear the burden of proof of establishing by clear and convincing evidence that Doe poses a flight risk or future danger to the public; (iii) the adjudicator conform to principles of fundamental fairness and

not give undue weight to unreliable evidence; and (iv) the adjudicator be required to consider meaningfully alternatives to imprisonment, such as release on recognizance, parole, or electronic monitoring, and to consider meaningfully Doe's ability to pay if setting a monetary bond.  (Am. Pet. ¶ 28).

With respect to Doe's first request, Respondents explain that "aliens have primarily appeared by VTC for hearings at Varick Street [Immigration Court] for the past two years but, due to technological constraints, the common practice is for counsel to participate either remotely by telephone or by appearing in person at the immigration court where Doe's counsel, along with the Immigration Judge, would be able to see Doe through his VTC appearance." (*See* Resp. Opp. 24-25).  Doe responds that "[a]lthough telephonic appearances by counsel are sometimes used in perfunctory master calendar hearings, such an appearance would not be constitutionally sufficient here because Ms. Soto would be unable to see her client, who will likely be called on to testify.  Thus, if Ms. Soto is not permitted to appear via VTC, appearing in person could endanger her health and the health of others in the immigration court in light of the ongoing viral pandemic in New York City." (Pet. Reply 10).  The Court understands Doe's desire to have his immigration counsel appear by VTC; however, Doe has not presented sufficient evidence of the technological capabilities of the Varick Street Immigration Court for the Court to grant his request.  Instead, the Court orders that, to the extent it is technologically possible — either currently or without undue burden on the immigration

court —the immigration judge allow both Doe and his immigration counsel to appear by VTC.

The Court grants Doe's second request and orders the Government to bear the burden of proving by clear and convincing evidence that Doe poses a flight risk or danger to the public to justify his continued detention.  This accords with the "overwhelming majority" of courts, which "have concluded post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainee's fundamental liberty interests."  *Joseph*, 2018 WL 6075067, at *12; *see Velasco Lopez* v. *Decker*, No. 19 Civ. 2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("While *Lora* is no longer binding authority, every court to have considered the constitutional issue presented in this case has agreed with its persuasive logic — under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)." (citing *Darko*, 342 F. Supp. 3d at 436 (quoting *Linares*, 2018 WL 5023946, at *2))); *Guerrero* v. *Decker*, No. 19 Civ. 11644 (KPF), 2020 WL 1244124, at *4 (S.D.N.Y. Mar. 16, 2020) ("As the district courts in *Linares* and *Darko* noted, given the important constitutional interests at stake, and the risk of harm in the event of error, it is appropriate to require the Government to bear the burden, particularly in light of long-established Supreme Court precedent affecting the deprivation of individual liberty.").

On the other hand, the Court denies Doe's third request: directing the immigration judge to conform to principles of fundamental fairness and to not give undue weight to unreliable evidence. *Firstly*, the Court has no reason to believe that the immigration judge would be anything other than fair in applying the law. *Secondly*, the decision of whether and to what extent to accord weight to evidence lies within the sound discretion of the immigration judge. *See Reid*, 2020 WL 996604, at *12. The regulations governing an immigration judge's granting of a bond to an immigrant detainee provide that: "The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or [ICE]." 8 C.F.R. § 1003.19(d). It is not the province of this Court to limit the evidence to be considered by the immigration judge.

Finally, with respect to Doe's fourth request, the Court agrees with Doe that the immigration judge should (and almost certainly would, even without Court directive) consider certain options short of detention that would ensure the safety of the community and Doe's appearance in court. The Court agrees with sister courts that have concluded that due process requires the immigration judge to consider ability to pay and alternative conditions of release in setting bond. *See Gomes Herbert*, 2019 WL 1434272, at *4 ("[T]he IJ must consider ability to pay and alternative conditions of release in setting bond." (internal quotation marks omitted)); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires that an IJ consider ability to pay and

24

alternative conditions of release in setting bond." (quotation and alteration omitted)); *Arce-Ipanaque* v. *Decker*, No. 19 Civ. 1076 (JMF), 2019 WL 2136727, at *3 (S.D.N.Y. May 15, 2019) (agreeing with petitioner that "the hearing must include a consideration of his ability to pay bond and suitability for alternative conditions of release, to avoid incarceration based on poverty" (internal quotation marks omitted)); *Lett*, 346 F. Supp. 3d at 389 ("The Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate.").[4]

Accordingly, the following conditions must be in place at Doe's individualized bond hearing: (i) the Government must carry the burden of proof to establish by clear and convincing evidence that Doe poses a flight risk or a future danger to the public; (ii) the immigration judge must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring; and (iii) the immigration judge must meaningfully consider Doe's ability to pay if a monetary bond is set.

---

[4]     *Accord Constant* v. *Barr*, 409 F. Supp. 3d 159, 172 (W.D.N.Y. 2019); *Abdi* v. *Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez* v. *Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests.").

## CONCLUSION

For the reasons stated above, Doe's Petition for a Writ of Habeas Corpus is GRANTED IN PART.  Within **thirty (30) days** of the date of this Opinion and Order, Respondents shall either provide Doe with an individualized bond hearing consistent with this Opinion and Order or release him.

The Clerk of Court is directed to file this Opinion under seal with viewing privileges granted only to the Court and parties.  Within **fourteen (14) days** of the date of this Opinion and Order, Doe is ORDERED to submit proposed redactions to this Opinion, to the Court via email, for the reasons explained in Doe's motion to seal and proceed under a pseudonym (Dkt. #3), and the Court's orders granting such requests (Dkt. #8, 12).

Further, the Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:      August 7, 2020
            New York, New York

_____
        KATHERINE POLK FAILLA
        United States District Judge

26